Hillsborough,  
Jan. 3, 1922.

### Jᴀᴍᴇs McLᴇᴀɴ v. Bᴏsᴛᴏɴ & Mᴀɪɴᴇ Rᴀɪʟʀᴏᴀᴅ.

An employee, injured while engaged in repairing the track of a railroad which extends from a point outside to a point inside of this state and is operated by the employer, is engaged in interstate commerce and entitled to the benefit of the federal employers' liability act (35 U. S. Stat. 65).

When the language of counsel in argument tends to prove that he was testifying and not advocating his client's cause, a verdict will be set aside unless the trial court finds that he was arguing and not testifying.

Cᴀsᴇ, to recover for an injury caused by the negligence of a fellow-employee. Trial by jury and verdict for the plaintiff.

Transferred by *Sawyer*, J., from the September term, 1920, of the superior court, on the defendants' exceptions to the denial of their motion for a nonsuit and to remarks of plaintiff's counsel. The facts and evidence relevant to the exceptions are stated in the opinion.

*Branch, Branch, Devine & Costakis (Mr. Frederick W. Branch* orally), for the plaintiff.

*Warren, Howe & Wilson (Mr. Howe* orally), for the defendants.

Pᴀʀsᴏɴs, C. J. The defendants base their contention that the court erred when it denied their motion for a directed verdict on the proposition that it cannot be found the plaintiff is entitled to the benefit of the federal employers' liability act. (35 U. S. Stat. 65, c. 149). The evidence relevant to that issue tends to prove that the plaintiff was engaged in repairing the track of the Manchester & Lawrence Railroad when he was injured; that that road extends from Lawrence, Mass. to Manchester, N. H., and that it was operated by the defendants. It is obvious it can be found from this evidence that the plaintiff's work was so closely connected with interstate commerce as to entitle him to the benefit of the federal act. *Pedersen* v. *Railroad*, 229 U. S. 146; s. c. 33 Am. & Eng. Ann. Cas. 153, *note, pp.* 163–167; 18 R. C. L. 855.

The plaintiff testified that he was pushing a motor car at the time the accident happened and that one of his fellow-employees, named Card, caused him to fall. Card was called by the defendants and, after denying that he pushed the plaintiff, was asked if he did not

make a statement to one of the plaintiff's attorneys which was reduced to writing and signed by him. He admitted that he made a statement and signed the paper shown him, but denied that he ever told the attorney or anyone else that he pushed the plaintiff as therein stated. The plaintiff's young daughter was called by him as a witness; and, after being asked a few questions in regard to the work she did after her father was injured, fainted and was excused from testifying further.

The defendants' counsel in commenting on these incidents charged the plaintiff and his counsel with putting statements into Card's mouth that he never made and with soliciting the plaintiff's daughter to commit perjury. As these were inferences of which the evidence was capable the plaintiff's counsel felt called on, in closing, to answer them and in the course of his argument said: "Mr. Warren has insinuated flatly that the way my brother and myself, and inferentially Mr. McLean, have presented this case to you has been sneaky, shrewd, astute, mean and unfair. Not only that, but he has gone further in his insinuation, and insinuated that this little girl whom you saw upon the stand yesterday had been in some way influenced either by myself or by her father, or by my brother, to go upon the witness stand and commit a perjury. As I said, gentlemen, I will admit youth . . . and lack of ability, but I will not admit, and I will do everything in my power to deny, the accusation, . . . that I have assisted or countenanced or suborned perjury. I am not the first man by the name of Branch to practice law in this state. This firm has been doing business for a good many years. And I will say, and I believe, that the reputation which goes with that name for honesty and integrity and fair dealing is as good as that which goes with the name of Warren."

If the words counsel used are given their ordinary meaning, he was not asking the jury to find that he and his brother were not guilty of the offences with which they were charged and that their reputation for honesty and fair dealing was such as to negative such charges, but was stating as forcibly as he could that that was the fact. In other words the language counsel used tends to prove that he was testifying rather than advocating his client's cause when he made the statements excepted to. Since this is so, the verdict must be set aside unless the plaintiff procures a finding that counsel was arguing, not testifying, when he made these statements, for they were relevant to the issues of the plaintiff's credibility and the defendants' fault as well as to the issue of damages. *Knapp* v. *Stone*, 79

N. H. 32; *Crossett* v. *Brackett*, 79 N. H. 102; *Bjork* v. *Company*, 79 N. H. 402.

*Exception to the denial of the motion for a verdict overruled: new trial nisi.*

SNOW, J., did not sit: the others concurred.